# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY AND SANDRA WILLISCH, on behalf of themselves and all other similarly situated<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONWIDE INSURANCE COMPANY OF AMERICA,<br>    Defendant. | Civil Action No. 09-5276-TJS |
| JEFFREY D. JUSTICE, II, on behalf of himself and all others similarly situated,<br>    Plaintiffs,<br><br>  v.<br><br>NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA,<br>    Defendant. | Civil Action No. 10-CV-5469-TJS |
| JOHN S. TOMAINE, on behalf of himself and all others similarly situated,<br>    Plaintiffs,<br><br>  v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br>    Defendant. | Civil Action No. 13-5408-TJS |

---

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

---

Plaintiffs, individually and on behalf of a Class of all those similarly situated, bring this action for damages and equitable relief arising from Defendants' overcharges for automobile insurance in the Commonwealth of Pennsylvania. Plaintiffs' allegations are based on actual knowledge as to their own acts. With respect to Defendants, Plaintiffs' allegations are

based both on actual knowledge and upon information and belief.  Some information and

documents in support of Plaintiffs' claims are in the exclusive possession, custody, or control of

Defendants or third parties.  Plaintiffs demand a trial by jury, and alleges as follows:

## NATURE OF THE CASE

1.      Pennsylvania law, 75 Pa.C.S. § 1799.1, requires that insurance companies

selling automobile insurance in the Commonwealth of Pennsylvania provide at least a 10%

discount on the premiums charged for comprehensive insurance coverage if the policyholder's

vehicle has a "passive antitheft device."

2.      In many vehicles, and in virtually all vehicles manufactured since 2002, a

passive antitheft device is standard, factory-installed equipment.  Defendants' policyholders,

who own vehicles equipped with standard, factory-installed passive antitheft devices, therefore,

automatically qualify for the statutorily mandated 10% discount.

3.      Defendants fail to provide the mandated passive antitheft device discount

for all policyholders with comprehensive coverage whose vehicles have factory-installed,

standard passive antitheft devices.  Defendants know or should know that these policyholders

qualify for the statutory discount, yet they systematically fails to provide the required discount

despite possessing information, and having other information readily available to it, to identify

vehicles with qualifying passive antitheft devices as standard equipment.

4.      Plaintiffs have accordingly filed this case as a class action on behalf of

policyholders with comprehensive coverage who insured vehicles with factory-installed passive

antitheft devices as standard equipment, but nevertheless did not receive the required discount

from Defendants on the applicable comprehensive coverage premiums.

5.      This Consolidated Amended Complaint asserts that Defendants violated

Section 1799.1 of Pennsylvania's Motor Vehicle Financial Responsibility Law, breached the

PHDATA 5247390_1

express and implied terms of its standard, form contract with policyholders, and violated the

Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Plaintiffs, on behalf of

themselves and the Class, seek damages and injunctive relief.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to the

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because:  (a) at least one member of the class

is a citizen of a state different from Defendant; (b) the amount in controversy exceeds

$5,000,000 exclusive of costs and interest; and (c) none of the exceptions under subsection

1332(d)(5) apply to this action.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

Defendant regularly conducts business here and is subject to personal jurisdiction in this District.

## THE PARTIES

8.      Plaintiffs Gary and Sandra Willisch are residents of Pennsylvania.  The

Willisches had a policy with Nationwide that insured their private passenger automobiles, a 2008

Ford Expedition and a 2004 Ford Explorer.  Both automobiles had as manufacturer's standard

equipment an engine immobilizer, the SecuriLock® Engine Immobilizer.  In addition, the

Expedition had an alarm system.  The Willisches were charged and paid premiums for

comprehensive coverage that did not include discounts for having anti-theft devices.  For

example, the Willisches' policy for the policy period March 7, 2009 through September 7, 2009

included a $51.80 premium for comprehensive coverage on the Explorer.  Neither of those

premiums included a discount for having anti-theft devices.

9.      Plaintiff Jeffrey D. Justice, II is a resident of Pennsylvania.  Justice had a

policy with Nationwide that insures his private passenger automobile, a 2000 Lincoln Town Car.

This automobile has a factory-installed engine immobilizer, the SecuriLock® passive anti-theft

system.  Justice was charged and paid premiums for comprehensive coverage that did not a

passive anti-theft device discount for his 2000 Lincoln Town Car.  Justice's policy for the policy

period September 12, 2010 through March 12, 2011 included a $133.50 premium for

comprehensive coverage on the Town Car.  This premium payment did not include a discount for

Justice's 2000 Lincoln Town Car having a passive anti-theft device.

      10.    John S. Tomaine is a resident of Pennsylvania.  Tomaine has a policy with

Nationwide that has insured his private passenger automobiles, including a 2002 Chevrolet

Cavalier.  This automobile has a standard, factory-installed engine immobilizer, Passlock® theft-

deterrent system.  Tomaine was charged by and paid premiums to Nationwide for comprehensive

coverage that did not include passive antitheft device discounts for his 2002 Chevrolet Cavalier.

For example, Tomaine's policy for the policy period October 15, 2009 through April 15, 2010

included a $37.50 premium for comprehensive coverage on the Cavalier.  This premium

payment did not include a discount for the Cavalier having a passive antitheft device.

Nationwide continued to issue policies to Tomaine that overcharged him because Nationwide did

not provide any credit to him for policy periods in which he did not receive a discount for having

this passive antitheft device.

      11.    Defendants Nationwide Insurance Company of America, Nationwide

Affinity Insurance Company of America, Nationwide Mutual Insurance Company, Nationwide

Assurance Company, Nationwide General Insurance Company, Nationwide Mutual Fire

Insurance Company, Nationwide Property & Casualty Insurance Company, Victoria Fire &

Casualty, Victoria Select Insurance Company, Titan Indemnity Company, Victoria Fire &

Casualty d/b/a Titan, and Victoria Fire & Casualty d/b/a Nationwide. (collectively

"Nationwide") are insurance companies incorporated in, and with their principal place of

business in the state of Ohio.  Nationwide sells private passenger automobile insurance in

Pennsylvania.  Defendant Nationwide Mutual Insurance Company is the parent of all Nationwide

automobile insurance companies that write automobile insurance in Pennsylvania.

## THE FACTS

12.     Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"),

75 Pa.C.S. § 1701, *et seq*., specifically requires that all policies for automobile insurance issued

in Pennsylvania include premium discounts for comprehensive coverage for automobiles

equipped with passive antitheft devices.  Under a subsection entitled "Antitheft devices," the law

states:

> All insurance companies authorized to write private
> passenger automobile insurance within this Commonwealth shall
> provide premium discounts for motor vehicles with passive
> antitheft devices.  These discounts shall apply to the
> comprehensive coverage and shall be approved by the
> commissioner as part of the insurer's rate filing, provided that such
> discounts shall not be less than 10%.  Some or all of the premium
> discounts required by this subsection may be omitted upon
> demonstration to the commissioner in an insurer's rate filing that
> the discounts are duplicative of other discounts provided by the
> insurer.

75 Pa.C.S. § 1799.1(a).

13.     The statute then defines "PASSIVE ANTITHEFT DEVICE" as:

> Any item or system installed in an automobile which is
> activated automatically when the operator turns the ignition key to
> the off position and which is designed to prevent unauthorized use,
> as prescribed by regulations of the commissioner.  The term does
> not include an ignition interlock provided as a standard antitheft
> device by the original automobile manufacturer.

75 Pa.C.S. § 1799.1(b).

14.     Nationwide's standard form insurance contract places the obligation to

calculate the premium on Nationwide:

PHDATA 5247390_1

> For the **policyholder's** payment of premiums and fees in amounts
> **we** require and subject to all of the terms and conditions of the
> policy, we agree to provide the coverages the **policyholder** has
> selected.  (Original emphasis.).

15.     Defendants' standard form insurance contracts provide that "the premium for each coverage is based on information in **our** possession."  The standard form contract also expressly states that its terms must be conformed to applicable law.

16.     Nationwide, as part of its contractual promise to use information in its possession to calculate premiums, applies Nationwide's "Discount Finder," which Nationwide has advertised in various, but nearly identical, ways, such as the following:  "Once you insure your vehicle with Nationwide, Discount Finder will keep an eye out for auto insurance discounts for you.  Every 6 months, our auto insurance Discount Finder reviews your Nationwide auto policy to see if you might qualify for new discounts.  Discounts are immediately applied to start your savings right away.  Discount Finder has helped more than 3 million of our customers find new ways to save."

17.     An engine immobilizer is a system, designed to prevent unauthorized vehicle use, engineered into the vehicle that causes the engine not to function, by disabling one or more vehicle systems, if the correct key device is not used to start the vehicle containing the engine immobilizer.  Original Equipment Manufactured ("OEM"), or factory-installed, immobilizer systems are passive, as they do not require any action on the part of the driver to arm or activate the systems, but rather activate automatically when the driver turns the ignition key to the off position.

18.     In terms of functionality, engine immobilizer systems include a fixed portion and the portable portion.  The fixed portion is that part of the system that remains installed in the vehicle at all times.  The portable part of the system refers to the key device that a

PHDATA 5247390_1

vehicle operator must bring to the vehicle in order to operate the vehicle.  The operation of an engine immobilizer is analogous to the traditional concept of lock and keys.  Successful engine start up and vehicle operation requires that the portable portion of the system, *i.e.*, the key device, be in direct contact or close physical proximity with the fixed portion of the system.

19.    All factory-installed immobilizers function in the same way by preventing the engine from running without the original manufacturer's key device.  Similarly, all factory-installed immobilizers activate in the same way, *i.e.*, by turning the key off and separating it from the internal, fixed components of the immobilizer (leaving the vehicle with the key device).

20.    Engine immobilizers have existed as standard factory equipment since 1986.  In the past decade or so, the vast majority of vehicles have had engine immobilizers as standard, factory equipment.  Immobilizer devices include the VATS/PassKey Theft Deterrent Systems, the PassLock Theft Deterrent Systems, the SecuriLock Passive Antitheft Electronic Engine Immobilizer System ("SecuriLock") and the Sentry Key Immobilizer System ("SKIS").

21.    There have been three main types of factory-installed, or OEM, engine immobilizer systems available since 1986:  (1) the General Motors ("GM") PassKey I (or vehicle antitheft system" or "VATS") and PassKey II systems (1986-2004), which are resistor-pellet systems; (2) GM's PassLock systems (1996 to present), which are magnetic rotation devices; and (3) the transponder-based systems, currently the most prevalent systems, such as Chrysler's SKIS, Ford's SecuriLock and GM's PassKey III and PassKey III+ theft deterrent systems (1995 to present).  There are also keyless start systems that function the same way as other immobilizer systems.

22.    An engine immobilizer is a distinct and separate device from the ignition interlock.

PHDATA 5247390_1

23.     The vehicles sold in the United States containing passive antitheft devices are well-known throughout the insurance industry.  Insurance companies and their affiliated trade organizations encourage consumers to buy vehicles with immobilizers and encourage automobile manufacturers to install such antitheft devices.

24.     Since the mid-1990s, vehicles manufactured with passive antitheft devices have been widely available, and for at least the past 10 years, the vast majority of all vehicles have factory-installed, passive antitheft devices.

25.     Nationwide is in possession of information necessary to determine whether a vehicle has a passive antitheft device as standard equipment, including, but not limited to, the following:  (1) Nationwide's database of vehicle specifications (the "Nationwide VIN database"), which identifies vehicles with standard passive disabling devices; and (2) Nationwide's records showing which make, model, and year vehicles its agents have determined have devices that qualify for a discount.  In this regard, Nationwide requires its agents, subject to audit, to obtain "trailing documents" confirming that a vehicle has a passive antitheft device.

26.     The information used to populate Nationwide's VIN database identifies the make, model, and year of Plaintiff's car as one having a standard passive antitheft device.

27.     Nationwide's preferred "trailing document" is a manufacturer's owner's manual, which shows the features of vehicles of the make, model, and year covered by the manual.  Owner's manuals are available from a number of sources, including from manufacturer's websites.

28.     For example, the owner's manual for Plaintiff Tomaine's 2002 Chevrolet Cavalier, which is available for free on Chevrolet's web site, provides, in part, the following: "Your vehicle is equipped with the Passlock theft-deterrent system.  Passlock is a passive theft-

deterrent system.  Passlock enables fuel if the ignition lock cylinder is turned with a valid key.  If a correct key is not used or the ignition lock cylinder is tampered with, fuel is disabled."

29.     In addition, information is readily available from (1) the Internet, including automobile manufacturer and third-party web sites identifying vehicles with passive antitheft devices as standard equipment; (2) third-party vehicle database providers, including Insurance Services Office, Inc. ("ISO"), R.L. Polk & Company and the Highway Loss Data Institute ("HLDI"); (3) automobile manufacturers and dealers; (4) governmental sources, including the National Highway Traffic Safety Administration ("NHTSA"), which issues notices granting exemptions to automobile manufacturers from the parts-marking requirements of the Federal Motor Vehicle Theft Prevention Standard on vehicles equipped with passive antitheft devices as standard equipment based on information submitted to NHTSA by automobile manufacturers about their antitheft devices; and (5) forensic examiners, who maintain lists and websites identifying vehicles with passive antitheft devices as standard equipment.

30.     HLDI is a nonprofit public service organization exclusively funded and governed by its member insurance companies (including Defendant Nationwide).  HLDI maintains a free database for its member insurers that identifies vehicles with passive antitheft devices as standard equipment.

31.     Information about vehicles equipped with passive antitheft devices as standard equipment is also available to insurers from vehicle manufacturers and dealers, including in vehicle Owner's Manuals, various manufacturer-sponsored web sites, in NHTSA filings or notices, from various documents produced by the automobile manufacturers identifying standard features on vehicles, including the presence of passive antitheft devices, from

PHDATA 5247390_1

immobilizer matrices provided by the automobile manufacturer, and from direct communication or contact with automobile manufacturers or dealers.

32.     NHTSA also provides information about passive antitheft devices and Nationwide, in fact, is required to report to NHTSA about, among other things, vehicles with antitheft devices and any premium reductions that it offers for vehicles equipped with passive antitheft devices.

33.     NHTSA already has granted General Motors' petition for exemption from the parts-marking requirements of the Federal Motor Vehicle Theft Prevention Standard for the Chevrolet Cavalier based on information provided by General Motors.  In its grant of the petition for exemption, NHTSA stated, "[t]he device [Passlock] is activated by turning off the ignition and removing the key."

34.     Within the past six years, Plaintiffs were the holders of policies issued by Nationwide that insured their private passenger automobiles.  Plaintiffs insured automobile was equipped with an engine immobilizer as standard equipment.  Therefore, Plaintiffs were entitled, under Pennsylvania law, to at least a 10% discount on his premiums for comprehensive coverage.

35.     Nationwide failed to provide Plaintiffs with a passive antitheft device discount for all policy periods during which Plaintiff insured cars with Nationwide.  Nationwide continued to charge Plaintiffs for automobile coverage without issuing them any credit or refund for having a passive antitheft device without receiving the applicable discount.

36.     Defendants, in their rate filings with the Pennsylvania Insurance Department, have never requested exclusion from the statutory requirements of providing a passive antitheft device discount.

37.     Defendants' filings with the Pennsylvania Insurance Department specifically require them to apply a 10 percent discount to the comprehensive coverage premium.

38.     As a prerequisite to providing any insurance to a proposed insured, Defendants require standard information from the insured, *i.e.,* the vehicle identification number (the "VIN") or the make, model, and year of the vehicle to be insured.  Knowing this information with respect to Plaintiffs meant that either Defendants knew that Plaintiffs' vehicles qualified for the mandated passive antitheft device discount, or Defendants ignored information in their possession, and other information readily available to it, that Plaintiffs' vehicles qualified for the mandated passive antitheft device discount.

39.     Nationwide uses standard form policy documents applicable to its Pennsylvania insureds, including standard form declarations pages, standard form applications, standard form contracts of insurance, and standard notice of availability forms, and employs standard procedures, rules, and underwriting guidelines for applying the Pennsylvania antitheft device discount.

40.     The Nationwide Auto Processing System ("NAPS") is Nationwide's core system for automobile policy rating and processing, including at renewal.  NAPS is integrated with a number of mainframe applications to underwrite automobile insurance policies.  The primary function of NAPS is to gather policyholder information, store final rate information for approved policy applications, and ultimately retain policy records.  NAPS is also used to present the final bound policies.  NAPS requires data sufficient to rate policies, including information about the driver, the policy, and the vehicle(s) insured at a sufficient level of detail to allow Nationwide to calculate premiums.  NAPS can calculate a premium without a VIN.

PHDATA 5247390_1

41.     Nationwide sells automobile insurance to the public through the following channels:  (i) exclusive agency channel; (ii) direct channel in which the customer calls a Nationwide customer service representative ("CSR") over the telephone; (iii) the Internet through Nationwide.com; and (iv) Internet exclusive agency channel in which the customer purchases the policy over the Internet through Nationwide.com, but elects to have an exclusive agent.

42.     Nationwide automatically applies an antitheft discount based on the information in its VIN database for customers who get insurance over the Internet, but until October, 2012, did not use the same information to apply a discount automatically for the majority of its insureds who get insurance through agents/CSRs.  Instead, Nationwide only applies a discount for these consumers if they identified their vehicle as having a device that qualifies for a discount.

43.     Nationwide required its agents to obtain "trailing documents," such as owner's manuals, to verify that a car has a passive antitheft device.  Nationwide did not use the information it obtained through this process to apply a discount to all of its insureds' vehicles that qualified for a discount.

44.     Many applicants are unaware of what a "passive antitheft device" is or if their vehicle has one.  Meanwhile, at the time Nationwide asked the applicant if his or her vehicle has a passive antitheft device, Nationwide either already knew whether the applicant's vehicle has a passive antitheft device as standard equipment, or had information in its possession identifying whether the vehicle has a passive antitheft device as standard equipment, but Nationwide does not use this information.

PHDATA 5247390_1

45.     Other automobile insurers in Pennsylvania automatically apply Pennsylvania's passive antitheft device discount without asking the insured whether his or her vehicle has a passive antitheft device.

46.     Nationwide has a BCS VIN application designed to retrieve vehicle data from Nationwide's VIN database based on a vehicle's VIN or the make, model and year of the vehicle.  Moreover, Nationwide has a VIN look-up tool for its agents, which allows agents and other Nationwide personnel to access antitheft device information from the VIN database. Nationwide, however, does not instruct its agents or CSRs to use either the BCS VIN application or the VIN look-up tool to access the antitheft information in Nationwide's VIN database when Nationwide quotes an automobile insurance policy for insureds, or at renewal.

47.     Defendants' standard form insurance contract provides that Defendant will use "information in [its] possession" to calculate the premium, yet when consumers obtain automobile insurance through one of Defendants' agents or CSRs, Nationwide did not use information in its own VIN database, or otherwise in its possession (or readily available to it from other sources) before October 2012 to apply the discount to vehicles it knows or should know have passive antitheft devices as standard equipment.

48.     While Nationwide uses information in its possession to apply discounts through its Discount Finder, Nationwide fails to use information in its possession about which vehicles have standard equipment that qualifies for a passive antitheft device discount.

### CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and the following class of similarly situated persons (the "Class"):

> All Nationwide Insurance Company of America,
> Nationwide Affinity Insurance Company of America, Nationwide

PHDATA 5247390_1

Mutual Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Victoria Fire & Casualty, Victoria Select Insurance Company, Titan Indemnity Company, Victoria Fire and Casualty d/b/a Titan, and Victoria Fire and Casualty d/b/a Nationwide policyholders in Pennsylvania, who at any point during the Class Period:  (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s) according to Nationwide's VIN Database, has a passive anti-theft device installed as manufacturer's standard equipment; and (c) did not receive a 10% discount on the comprehensive portion of the paid premium.

50.    With respect to current and former policyholders of Nationwide Insurance Company of America, the Class Period is from November 12, 2005 to February 28, 2015.  With respect to current and former policyholders of Nationwide Affinity Insurance of America, the Class Period is from October 15, 2006 to February 28, 2015.  With respect to current and former policyholders of Nationwide Mutual Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Victoria Fire & Casualty, Victoria Select Insurance Company, Titan Indemnity Company, Victoria Fire and Casualty d/b/a Titan and Victoria Fire and Casualty d/b/a Nationwide, the Class period is from September 17, 2009 to February 28, 2015.

51.    Defendants and their employees and any court personnel to whom this case is assigned are excluded from this proposed Class.

52.    The members of this Class number at least in the thousands and are geographically diverse, such that joinder of all of the individual class members is impracticable. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records.

PHDATA 5247390_1

53.     Plaintiffs' claims are typical of the claims of all the other members of the Class.  The claims of Plaintiffs and the other members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and to all of the other Class members.

54.     The Class has a well-defined community of interest.  Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

55.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual Class members.

56.     Defendant has acted or refused to act on grounds that make declaratory or injunctive relief appropriate for the class as a whole.

57.     Common questions of law and fact affecting members of the Class include, but are not limited to:

a.     Whether Defendants violated 75 Pa.C.S. § 1799.1;
b.     Whether Defendants' conduct constitutes a breach of contract;
c.     Whether Defendants violated Pennsylvania's consumer fraud statute, the Pennsylvania Unfair Trade Practices and Consumer Protection Law;
d.     Whether Plaintiffs and Class members are entitled to damages, costs, and/or attorneys' fees from Defendants; and
e.     Whether Defendants have charged Plaintiffs and Class members premiums greater than Defendant's rate filings and the law permits.

58.     Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal

15

litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

59.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including virtually identical actions already pending before the United States District Court for the Eastern District of Pennsylvania. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so.  Neither Plaintiffs nor their counsel has any interest adverse to those of the other Class members.

**COUNT I**
**[Violation of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1799.1]**

60.     Plaintiffs incorporate paragraphs 1-59 by reference.

61.     When the Legislature enacted the MVFRL, one of its primary goals was to reduce the cost of automobile insurance in the Commonwealth.

62.     To that end, the MVFRL mandates that policyholders whose automobiles include passive antitheft devices or systems must be given at least a 10 percent discount on the premium charged for comprehensive coverage.

63.     Plaintiffs and other members of the Class were entitled, under the MVFRL, to a discount of at least 10 percent on their comprehensive coverage premiums because their vehicles have passive antitheft devices.

64.     Defendants failed to provide the passive antitheft discount on Plaintiffs', as well as on other Class members' vehicles, by reducing Plaintiffs' and Class members' comprehensive coverage premiums by 10 percent.

65.     As such, Defendants violated the MVFRL.

66.     Plaintiffs and other Class members have been damaged by Defendants' violation of the MVFRL, as they have been forced to pay higher premiums for their policies than were permitted under state law.

## COUNT II
### [Breach of Contract—Implied Terms and Express Terms]

67.     Plaintiffs incorporate paragraphs 1-66 by reference.

68.     By operation of law, existing laws and statutes, including those applicable to insurance policies, such as 75 Pa.C.S. § 1799.1, are implied terms of any contract, to which such laws and statutes pertain, and are considered a part of such contract as though they were expressly incorporated therein.

69.     The antitheft device discount provision, 75 Pa.C.S. § 1799.1, pertains to the subject matter of the automobile insurance contracts between Defendant and its insureds, including Plaintiff and all class members, and thus, is an implied term of every automobile policy issued in Pennsylvania.

70.     As alleged above, Plaintiffs' and other Class members' automobiles were equipped with one or more qualifying passive antitheft devices, entitling Plaintiffs and the other Class members to the passive antitheft device discounts mandated by 75 Pa.C.S. § 1799.1 and Defendants' rate filings.

71.     Defendants violated 75 Pa.C.S. § 1799.1 by failing to provide the antitheft discounts to Plaintiff and other Class members with a vehicle with one or more passive antitheft devices that qualify under 75 Pa.C.S. § 1799.1.  Because the terms of section 1799.1 are implied in every automobile insurance contract issued in Pennsylvania, the violation of 75 Pa.C.S. § 1799.1 also constitutes a breach of the implied and express terms of Defendants' contracts with Plaintiffs and other Class members.

PHDATA 5247390_1

72. Defendants' rate filings include its filed antitheft rule, which provides the following:

> A 10 percent discount (multiply by .90) in Comprehensive premium is applicable for vehicles equipped with the following anti-theft device:
> A passive anti-theft device is one that is engaged automatically when the operator turns the ignition switch of the vehicle to the off position.  (A separate manual step is not required to engage the device).  The device must disable the vehicle by making the fuel, ignition, or starting system inoperative.  Ignition interlock systems (mechanisms that lock the steering column when the key is removed) do not qualify for the discount.

73. Defendants violated 40 P.S. § 1184(h), which provides, "no insurer shall make or issue a contract or policy except in accordance with filings or rates which are in effect for said insurer as provided in this Act," by failing to provide the antitheft discounts to vehicles that Plaintiffs and other Class members insured with Defendants that are equipped with an antitheft device that qualifies as passive under Defendants' rate filings, thus, charging premiums in excess of those permitted by law.  Because the terms of 40 P.S. § 1184(h) are implied in every automobile insurance contract issued in Pennsylvania, including the contracts with Plaintiffs and other Class members, the violation of 40 P.S. § 1184(h), by charging rates in excess of those permitted by law and Defendant's rate filings, also constitutes a breach of the implied and express terms of Defendant's contracts with Plaintiff and other Class members.

74. The standard Nationwide automobile insurance policy provides the following language:  "**We, you**, and anyone insured by this policy are bound by and must comply with all terms, conditions and obligations of the policy."  Defendants' standard form contracts with Plaintiffs and other Class members also provide, "[t]he premium for each coverage is based on information in **our** [Defendants'] possession" and that "[a]ny terms of this

PHDATA 5247390_1

policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform." Defendants' standard form contracts with Plaintiff and other Class members further requires Defendants to accurately calculate premiums and to adjust premiums when the information the premium is based upon changes or is corrected. Defendants possesses sources of information that identify whether a vehicle has a qualifying passive antitheft device, including, but not limited to, the vehicle's VIN number or the make, model and year of the vehicle, as well as information in its databases and owner's manuals or other "trailing documents," identifying which cars have devices that qualify for a discount. Defendants violated the express terms of its contracts with Plaintiffs and other Class members by failing to apply the passive antitheft device discounts to vehicles insured by Plaintiffs and other Class members that were equipped with one or more qualifying passive antitheft devices.

75. Nationwide failed to use information in its possession to use Nationwide's Discount Finder in connection with insured's policies in Pennsylvania. Nationwide breached the terms of its contracts with insureds by failing to apply Discount Finder to apply the Pennsylvania passive antitheft device discount, including by failing to use information in its possession showing which vehicles have standard equipment that qualify the vehicle for a passive antitheft device discount.

76. Nationwide breached the express terms of its contract by failing to use information in its possession to automatically apply an antitheft device discount for insureds who did not use Nationwide's Internet channel, even though Nationwide uses the same information to apply a discount for insureds who apply through the Internet.

77.     Nationwide breached the express terms of its contract by failing to require its agents to use Nationwide's BCS VIN or Vin look up tool for information in Nationwide's possession to apply an antitheft device discount.

78.     Plaintiffs and other Class members were damaged by Defendants' breach of contract in that they paid higher premiums on their policies than they should have under the state laws, Defendant's rate filings, and the express and implied terms of the contract.

79.     Plaintiffs and other Class members performed all of their obligations under the terms of their contracts with Defendants.

### COUNT III
### [Pennsylvania Unfair Trade Practices Act and Consumer Protection Law]

80.     Plaintiffs incorporates paragraphs 1-79 by reference.

81.     At all relevant times, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. § 201-1 et seq. ("UTPCPL"), was in effect and applicable to the transactions at issue in this case.

82.     Plaintiffs and members of the proposed Class purchased automobile insurance from Defendant primarily for personal, family or household purposes within the meaning of 73 Pa.C.S. § 201-9.2.

83.     Defendants have been regularly engaged, as part of its general business practice, in a scheme of:  (a) wrongfully misrepresenting the applicable rate for automobile insurance by failing to inform class members that they were entitled to a passive antitheft device discount of at least 10% as mandated by state law; (b) wrongfully making these misrepresentations for the purpose of obtaining an increased premium for the policies of Plaintiff and Class members; (c) wrongfully charging Plaintiffs and other Class members a higher rate for automobile insurance than Defendants were permitted to charge by law; and (d) providing

PHDATA 5247390_1

inaccurate and misleading notices to Plaintiffs and Class members about the discount, contrary to Defendants' obligations under 75 Pa.C.S. § 1791.1.

84.     Defendants used and employed unfair and/or deceptive acts or practices within the meaning of 73 Pa.C.S. §§ 201-2 and 201-3.  These unfair and/or deceptive acts and practices include, but are not limited to:

a.     Failing to comply with any written guaranty or warranty given to the buyer at, prior to, or after a contract for the purchases of goods or services made under § 201-2(4)(xiv) (Defendants failed to uphold the terms of the policies issued to Plaintiffs and other Class members, including their promise to base premiums on information in its possession and to be bound by, and to comply with, all the terms, conditions and obligations of its insurance policies, which by law also incorporate all relevant statutes, regulations and rate filings, by charging premiums that were in excess of those permitted by state laws and its own rate filings).

b.     Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding under § 201-2(4)(xxi) (Defendant charged a higher premium than they were permitted to by state law, and never informed Plaintiffs and other Class members that they were entitled by law to at least a 10% discount on their comprehensive coverage premiums, and sent billing statements and declarations pages misrepresenting that Nationwide was applying all discounts to which Plaintiff and Class members were entitled).  Defendants had information in their database showing that Plaintiffs and Class members were entitled to a discount, including information in its VIN database and information

about whether it was giving a discount to other insureds with the same make, model and year vehicle.  Defendants, thus, purposely deceived Plaintiffs and the Class and concealed from them the fact that they were entitled to the passive antitheft device discount.  Defendants' policy of not providing the antitheft discount to all qualifying policyholders is a deceptive practice under the UTPCPL.

c.      Engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding, under § 201-2(4)(xxi), by not applying the passive antitheft device at renewals, even though Defendants know, or possess information identifying, that a vehicle has a qualifying antitheft device, and especially in light of Nationwide's advertisements about its "Discount Finder." Nationwide claims, "Once you insure your vehicle with Nationwide, Discount Finder will keep an eye out for auto insurance discounts for you.  Every 6 months, our auto insurance Discount Finder reviews your Nationwide auto policy to see if you might qualify for new discounts.  Discounts are immediately applied to start your savings right away.  Discount Finder has helped more than 3 million of our customers find new ways to save."  Nationwide does not use its Discount Finder to apply the passive antitheft device discount even though it possesses the information to do so.

d.      Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions under § 201-2(4)(xi) (Nationwide claims, "Once you insure your vehicle with Nationwide, Discount Finder will keep an eye out for auto insurance discounts for you.  Every 6 months, our auto

insurance Discount Finder reviews your Nationwide auto policy to see if you might qualify for new discounts.  Discounts are immediately applied to start your savings.  Discount Finder has helped more than 3 million of our customers find new ways to save."  Nationwide does not use its Discount Finder to apply the passive antitheft device discount even though it possesses the information to do so.  Defendant, thus, made misleading statements of facts concerning premium discounts.).

85.     Defendants' misrepresentations, concealment, omissions, and general conduct were likely to deceive and likely to cause misunderstanding, and/or, in fact, caused Plaintiffs and other Class members to be deceived and to misunderstand that they were paying more for their insurance policies than was permitted by state law.

86.     Defendants intended that Plaintiffs and other Class members would rely on its misrepresentations, concealment, omissions, and/or deceptions that they were being charged the correct rate for automobile insurance under state law.

87.     Plaintiffs and other Class members, by routinely paying their premiums to maintain their policies, did, in fact, rely on Defendants' misrepresentations, concealment, omissions and deceptions.

88.     Plaintiffs and other Class members have been damaged as a result of Defendants' deliberate violations of the UTPCPL and have suffered actual, ascertainable losses, in that they paid higher premiums for their automobile insurance policies than they should have, because they should have been given at least a 10% passive antitheft device discount, as mandated by state law.

89.     Therefore, Plaintiffs and other Class members are entitled to relief, including $100 per violation, treble damages, and reasonable attorneys' fees and costs under the UTPCPL, 73 Pa.C.S. § 201-9.2.

## JURY DEMAND

Plaintiffs demand trial by jury on all counts for which a jury trial is permitted.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, prays for the following relief:

a.     An order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel for Plaintiffs as lead counsel for the Class;

b.     An order declaring that the acts and practices of Defendants, as set out above, constituted a breach of the express and implied terms of its automobile insurance contracts, a violation of 75 Pa.C.S. § 1799.1, 40 Pa.C.S. § 1184, and 73 Pa.C.S. § 201-1, *et seq*., the Unfair Trade Practices and Consumer Protection Law, and a violation of Defendant's rate filing;

c.     An order enjoining Nationwide from issuing insurance policies without providing antitheft device discounts;

d.     A judgment for, and award of actual and punitive damages to, Plaintiffs and the members of the Class;

e.     Payment of costs of suit herein incurred and reasonable attorneys' fees;

f.     Treble damages, $100 per violation, and reasonable attorneys' fees and costs under the UTPCPL, 73 Pa.C.S. § 201-9.2;

g.     An award of pre-judgment and post-judgment interest;

PHDATA 5247390_1

h.      A permanent injunction, enjoining Defendants from engaging in conduct

in violation of 75 Pa.C.S. § 1799.1; and

i.      For other and further relief as the Court may deem just and proper.

        s/Ira Neil Richards
Ira Neil Richards (I.D. No. 50879)
Arleigh P. Helfer III (I.D. No. 84427)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 751-2503
Facsimile: (215) 751-2205

Joseph E. Mariotti
Christopher P. Caputo
CAPUTO & MARIOTTI, P.C.
730 Main Street
Moosic, Pennsylvania 18507
Telephone: 570-342-9999
Facsimile: 570-457-1533

Anthony J. Bolognese
Joshua Grabar
Bolognese & Associates, LLC
1500 JFK Blvd
Suite 320
Philadelphia, PA 19102
Telephone: (215) 814-6750

ATTORNEYS FOR PLAINTIFF AND THE CLASS

Of Counsel and not admitted in this case:
John G. Jacobs
Bryan G. Kolton
Jacobs Kolton, Chtd.
55 West Monroe Street, Suite 2970
Chicago, Illinois 60603
Telephone:  (312) 427-4000
Facsimile:  (312) 427-1850

Dated:  March 13, 2015

PHDATA 5247390_1